AO 91 (Rev. 11/11) Criminal Complaint                                                    AUSA Timothy J. Chapman (312) 353-1925

FILED
6/22/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

LEONEL MERCADO JAIMES

CASE NUMBER: 26 CR 313

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about May 7, 2026, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
| --- | --- |
| Title 21, United States Code, Section 841(a)(1) | knowingly distributed a controlled substance, namely, approximately 428 grams of a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance |

This criminal complaint is based upon these facts:

 X  Continued on the attached sheet.

Date: 2026.06.22
06:56:15 -05'00'

CRAIG FAGAN, Special Agent
Homeland Security Investigations (HSI)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: June 22, 2026 9:55am

*Judge's signature*

City and state: Chicago, Illinois

ALBERT BERRY III, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

### **AFFIDAVIT**

I, Craig Fagan, being duly sworn, state as follows:

1.    I am a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), and have been so employed since September 2023. I am currently assigned to HSI's Homeland Security Task Force ("HSTF"), and as part of my duties as an HSI Special Agent I investigate narcotics trafficking offenses, including but not limited to offenses under Title 21, United States Code, Sections 841, 843, 844, and 846.

2.    As part of training to become a Special Agent, I completed both the Criminal Investigator Training Program and HSI Special Agent training at the Federal Law Enforcement Training Center in Glynco, Georgia. Both programs required me to satisfactorily pass training that included the law and investigative techniques related to narcotics trafficking offenses.

3.    I have also received specialized training, on the state and federal levels, on the means and methods by which individuals and drug trafficking organizations conduct their illegal drug trafficking activities. I have also participated in multiple investigations involving illegal drug trafficking by both drug trafficking organizations and individuals. As such, I am familiar with the various methods used by drug traffickers and their organizations to transport, store, and distribute

narcotics and narcotics trafficking proceeds. I have participated in investigations involving various drug types, including heroin, fentanyl, methamphetamine, and cocaine. I have experience with a wide range of investigative techniques, including various types of visual and electronic surveillance, the debriefing of defendants, witnesses and informants, as well as others who have knowledge regarding the distribution and transportation of controlled substances, facilitating controlled deliveries of narcotics, the execution of search and arrest warrants, and the management and use of informants. Based upon my experience and training, I am familiar with the ways by which drug traffickers conduct their unlawful drug trafficking activity

4.     Prior to becoming a HSI Special Agent, I worked as a police officer for the Chicago Police Department ("CPD") for over five years. During my time with CPD, my training and experience included, but was not limited to, making arrests, responding to calls for service, testifying in court, and recognizing/disrupting criminal behavior. As a CPD police officer, I would also conduct preliminary investigations into narcotics related offenses requiring me to recognize indicators of narcotics trafficking and distribution.

5.     This affidavit is submitted in support of a criminal complaint charging LEONEL MERCADO JAIMES ("MERCADO JAIMES") with knowingly distributing a controlled substance, namely, approximately 428 grams of a substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

2

6.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents and officers, information provided to law enforcement by a confidential informant ("CI"), and my review of other evidence, including but not limited to visual and audio recordings, and recorded interviews.

## I.      FACTS SUPPORTING PROBABLE CAUSE

### A.      Case Background and Initial Meeting Between CI and MERCADO JAIMES

7.      In late April 2026, a registered HSI CI informed HSI that an unknown Hispanic male, subsequently identified as MERCADO JAIMES, approached the CI at a truck dealership in Chicago, Illinois, and began a conversation with the CI.[1] During the conversation, which was in the Spanish language, MERCADO JAIMES said words to the effect that he perceived the CI to be involved in criminal activity. As the conversation evolved further, MERCADO JAIMES[2] eventually offered to sell the CI one pound of methamphetamine and one AK-47 style rifle in exchange for $2,000 of United States Currency. The CI did not initially refuse or accept the offer,

---

[1] The CI has previous criminal convictions for felony traffic violations, possession of cannabis, resisting a peace officer, aggravated assault, and felony immigration violations. The CI has assisted HSI in the past on multiple investigations that led to federal indictments and convictions. The CI is a foreign national and lacks lawful status in the United States and is cooperating with the hope of renewing an immigration benefit, namely, the right to be allowed to temporarily remain in the United States. To date, no promises have been made to the CI regarding whether this benefit will be renewed as a result of the CI's cooperation.

[2] MERCADO JAIMES' full identity was unknown to HSI prior to his arrest. Prior to the arrest, HSI was familiar with MERCADO JAIMES' physical appearance, vehicles used, and locations frequented by way of physical surveillance, air surveillance, information provided by the CI, and review of audio and video recordings. MERCADO JAIMES' identity was revealed on the date of his arrest through self-disclosure, possession of a Mexican identification card, and affirmation from fingerprint analysis. MERCADO JAIMES' identity was further confirmed through his birthday and an existing Federal Bureau of Investigation number, as discussed below.

but contact information was exchanged through the WhatsApp Messenger App. The CI notified HSI personnel of this interaction with MERCADO JAIMES.

8.     Following the initial meeting and conversation, the CI and MERCADO JAIMES continued to communicate through WhatsApp Messenger. MERCADO JAIMES messaged the CI from four different WhatsApp usernames and communicated by way of text, audio, and video messages.[3] MERCADO JAIMES initiated the WhatsApp communication with the CI using a cellular phone number ending in 5943 and username "~Pavel Flores".

9.     In April 2026, MERCADO JAIMES messaged the CI from a new WhatsApp account using a phone number ending in 6238 and the username "Alexzander", MERCADO JAIMES related to the CI that the "fierro" was no longer available for purchase by the CI. The CI understood MERCADO JAIMES' use of the Spanish term "fierro" (which translates to "iron" or "metal" in English) as a reference to the AK-47 that MERCADO JAIMES had previously indicated he could sell to the CI, and I also know from my training and experience that, in the context of illicit weapons transactions, participants to the transaction often use code words to refer to weapons. However, MERCADO JAIMES related to the CI that the "frio" was still available for purchase. The CI understood MERCADO JAIMES' use of the word "frio"

---

[3] All communications between the CI and MERCADO JAIMES were in the Spanish language. The CI summarized for HSI personnel the content of their communications with MERCADO JAIMES. An HSI Special Agent who is fluent in the Spanish language reviewed recordings of the verbal communications and the written communications between MERCADO JAIMES and the CI (as described below) and affirmed the accuracy of the CI's summary of the contents of those communications.

(which translates to "cold" in English) as a reference to methamphetamine and, as with weapons trafficking, I know from my training and experience that, in the context of illegal drug trafficking, the participants generally speak in code in order to communicate in a manner that provides plausible deniability should the communications be intercepted by law enforcement officers.

10. In late April 2026, MERCADO JAIMES sent the CI a WhatsApp message from another new account using a cellular phone number that ended in 0057 and exhibited the username "🤏" (an emoji of a hand with the thumb touching the forefinger). Throughout the conversation, MERCADO JAIMES and the CI continued to discuss the upcoming methamphetamine transaction. In May 2026, MERCADO JAIMES offered to sell one "libreta" of "frio" to the CI for $1,000. The CI understood MERCADO JAIMES's use of the Spanish term "libreta" (which translates to "notebook" in English) as a reference to the unit of mass equivalent to a pound. At HSI's direction, the CI accepted MERCADO JAIMES' offer to sell CI one pound of methamphetamine through the WhatsApp conversation. The CI and MERCADO JAIMES agreed to meet on or about May 7, 2026.

**B. May 7, 2026, Controlled Purchase of Methamphetamine**

11. On or about May 7, 2026, MERCADO JAIMES and the CI discussed over WhatsApp the details regarding the transaction of the methamphetamine purchase that would take place. MERCADO JAIMES was utilizing WhatsApp through the same cellular phone number ending in 0057 that exhibited a username "🤏" (an emoji of a hand with the thumb touching the forefinger). MERCADO

5

JAIMES ultimately invited the CI to an address near the 4800 block of West Shakespeare Avenue in Chicago to conclude the purchase the same day.

12. On or about the afternoon of May 7, 2026, HSI agents and officers equipped the CI with audio and video recording devices on the CI's person and provided the CI with $1,000 in buy money to complete the purchase of methamphetamine from MERCADO JAIMES. Thereafter, the CI drove the CI's vehicle (hereinafter, "UCV") to the proximity of the 4800 block of West Shakespeare Avenue in Chicago.[4] Upon arrival, the CI parked the UCV at approximately 2135 North Kilpatrick Avenue in Chicago. The CI exited the UCV and began walking south on Kilpatrick Avenue. As the CI did so, the CI received a call from MERCADO JAIMES who directed the CI to relocate further south on Kilpatrick Avenue near a particular vehicle. Based upon that direction from MERCADO JAIMES, the CI returned to the UCV and thereafter moved the UCV to approximately 2113 North Kilpatrick Avenue.

13. After parking the UCV, the CI exited the UCV and then met with MERCADO JAIMES, who was present on North Kilpatrick Street. The CI began speaking to MERCADO JAIMES, who instructed the CI to follow MERCADO JAIMES on foot to a residence located nearby on North Kilpatrick Avenue (the "Subject Residence").

---

[4] The documented observations of what transpired during the controlled purchase were made through a combination of physical surveillance, air surveillance, audio and video recordings, and information gathered during CI debriefings.

14.     In view of the video-recording device on the CI's person, MERCADO JAIMES opened the front door of the Subject Residence and walked into what appears to be a small common area of the Subject Residence. MERCADO JAIMES then opened an interior door and walked up a few stairs before bending over, reaching down and retrieving a brown suede bag. MERCADO JAIMES then moved down the stairs and handed the brown suede bag to the CI, who remained in the common area at the bottom of the stairs. At approximately the same time, the CI handed to MERCADO JAIMES the $1,000 of buy money, which was inside a plastic bag. A still frame of MERCADO JAIMES taken from the CI's video recording device at the time MERCADO JAIMES handed the suede bag to the CI follows:



26/05/07 15:35:37

7

15. The CI then returned to the UCV with the brown suede bag. The CI then departed the area in the UCV and relocated to a predetermined location while followed by HSI law enforcement personnel.

16. The CI turned over the brown suede bag to HSI personnel. The brown suede bag was observed to contain suspected methamphetamine inside a large, clear Ziplock style bag. The suspect methamphetamine was secured and transported to the HSI Chicago Office located in Lombard, Illinois. A narcotics field test indicated the presence of methamphetamine. The gross weight of the bag containing the methamphetamine was 437.08 grams (one pound is approximately 453.6 grams). On May 11, 2026, the methamphetamine was submitted to the Drug Enforcement Administration ("DEA") laboratory for further laboratory testing. On June 10, 2026, the methamphetamine was analyzed by a DEA Forensic Chemist. The analysis revealed a net weight of 428.0 g ($\pm$ 0.2 g) and the presence of "Methamphetamine Hydrochloride" with a purity level of 100% ($\pm$ 7%).

17. On May 7, 2026, following the above-described transaction, MERCADO JAIMES sent the CI a selfie style video message from the same WhatsApp account that was used to facilitate the transaction (phone number ending in 0057 and username "🐾") of MERCADO JAIMES in front of what appeared to be a "raspados" shaved ice refreshment cart. HSI agents were able to obtain clear still frames of MERCADO JAIMES wearing the same hat and hooded sweatshirt as the image depicted in paragraph 14. The still frame images are depicted below:



## C.    Arrest of MERCADO JAIMES

18.    On June 18, 2026, members of the HSI HSTF set up surveillance near MERCADO JAIMES' suspected address (later confirmed address). The HSTF observed a brown Fiat 500 (the "Subject Vehicle"), known to be used by MERCADO JAIMES, bearing Illinois temporary license plate 674ac107 parked, unoccupied on the 4700 block of West Shakespeare Avenue in Chicago. At approximately 2:50 p.m., MERCADO JAIMES and an unknown female ("UNK") were observed walking toward the Subject Vehicle. MERCADO JAIMES entered the driver's seat and UNK entered the passenger's seat. The Subject Vehicle then departed westbound on Shakespeare Avenue.

19. HSTF personnel followed the Subject Vehicle prior to initiating a vehicle stop on the 2000 block of North Lawler Avenue in Chicago. During the vehicle stop, MERCADO JAIMES was arrested and UNK was released in possession of the Subject Vehicle. Following the arrest, MERCADO JAIMES revealed his name to be "Leonel MERCADO" and identified his date of birth. MERCADO JAIMES was found to be in possession of a Mexican "INSTITUTO NACIONAL ELECTORAL, CREDENCIAL PARA VOTAR" card confirming the name "Leonel MERCADO JAIMES" and containing a dated photo that resembled MERCADO JAIMES. MERCADO JAIMES related that he resides at two adjacent buildings on North Kilpatrick Avenue, one of which was the address at which MERCADO JAIMES provided approximately 428 grams of methamphetamine to the CI on or about May 7, 2026. MERCADO JAIMES was transported to the HSI office in Lombard, Illinois, for further processing.

20. During arrest processing, MERCADO JAIMES was digitally fingerprinted. These fingerprints were submitted through law enforcement databases for further analysis. The completed analysis revealed the fingerprints to be a match for "Leonel Mercado Jaimes" with an associated FBI number and an Alien Registration Number. Further review of the affiliated FBI number revealed MERCADO JAIMES to have a 2011 federal felony conviction for conspiracy to possess with intent to distribute and to distribute a controlled substance in the Northern District of Illinois (Case No. 11 CR 125), as well as a 2012 felony conviction for aggravated criminal sexual abuse in the state of Illinois. MERCADO JAIMES was

10

also previously deported from the United States in 2015 for being an inadmissible illegal alien.

21.     Affiant, HSI Special Agent David Rodriguez, and HSI Task Force Officer ("TFO") Matthew Sanchez conducted a recorded custodial interview of MERCADO JAIMES. Special Agent Rodriguez read MERCADO JAIMES his Miranda rights in the Spanish language.[5] MERCADO JAIMES waived his rights both verbally and by signing a written waiver.

22.     During the interview, MERCADO JAIMES related that he was born in Mexico and was previously deported. MERCADO JAIMES illegally re-entered the United States approximately one and a half years ago. MERCADO JAIMES admitted to selling methamphetamine to an individual he had recently met. MERCADO JAIMES related that he had only sold methamphetamine once within the last six months, to the one individual he had recently met. MERCADO JAIMES related that he has also sold cocaine and has more experience selling cocaine than methamphetamine.

23.     MERCADO JAIMES related that he uses WhatsApp messenger to communicate and has used it when discussing narcotics transactions. MERCADO JAIMES related that he frequently activates new WhatsApp accounts and deletes previous accounts. Following the initial interview, MERCADO JAIMES provided

---

[5] MERCADO JAIMES' first and primary language is Spanish, and he requested that his rights be read to him in the Spanish language. However, MERCADO JAIMES demonstrated conversational competency in the English language as well. During the interview, the conversation shifted between the two languages at different points. Special Agent Rodriguez is fluent in the Spanish language.

verbal and written consent for HSTF members to view the content in two phones that were retrieved from the Subject Vehicle that MERCADO JAIMES affirmed belonged to and were used by him. HSTF members observed WhatsApp messenger on both phones, but it appeared that previous WhatsApp communications with the CI had been deleted.

## CONCLUSION

24.     Based on the foregoing, I respectfully submit that there is probable cause to believe that, on or about May 7, 2026, MERCADO JAIMES did  knowingly distribute approximately 428 grams of a substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1).

FURTHER AFFIANT SAYETH NOT.

C. Fagan     Date: 2026.06.22
             06:57:46 -05'00'

CRAIG FAGAN, Special Agent
Homeland Security Investigations

SWORN TO AND AFFIRMED on June 22, 2026

HONORABLE ALBERT BERRY III
United States Magistrate Judge

12